On this first case, Des Moines Call, 2-12-11-17, In Re to Marriage of Schlichting, on behalf of the Avalanche, Ms. Nancy Schilling, on behalf of the Avalanche, Mr. Robert Pottinger. Thank you. Ms. Schilling, you may proceed. Thank you, Your Honor. Nancy Schilling, on behalf of the Avalanche, Ms. Larissa Hansler. The standard review in this matter is an abuse of discretion by the trial court regarding its final property disposition. The trial court abuses its discretion when no reasonable person or approved person would have distributed the property as the trial court did. The trial court abused its discretion in this matter when it awarded all plaintiff's restricted membership interests in the LLC to the defendant, a nonmember, because said award violated the LLC's operating agreement and violated the Lender Liability Company Act. Specifically, the trial court's award not only violated the involuntary and voluntary transfer restrictions of the operating agreement, but also violated other provisions of the operating agreement. It caused plaintiff to violate her fiduciary duties to her fellow members and the LLC, and caused her to violate the Lender Liability Company Act. Is the trial court bound by the operating agreement? Yes, Your Honor, it is bound by the operating agreement. Why? Well, I think the case law on this matter is what we look to has got to be debit-de-debit. And actually, that was a case before the Second District. And that was a case of first impression where the court looked to it to say, can a court, by an operation of law, invalidate a transfer restriction provision? In this matter, the operating agreement is unambiguous. This case is distinguishable from the cases cited by the defendant because none of those cases even address a limited liability company. A member in a limited liability company is not the same as a nonmember. There's a big distinction between members who contract with other parties as to how they're going to contractually obligate themselves in that LLC. That's exactly what occurred in this matter. These members contractually, unambiguously contracted themselves that no other third party would be a member. It's evident, 16.1, 16.6, 20.1, all these provisions provide no third party can be a member without unanimous prior written consent of the other members. What if the members had agreed that, by the operating agreement, that if any one of them became divorced at any time, that the membership interest would not be subject to division ever? They just all agreed, we're never going to give our spouses anything. Well, I think that the court could look at that, and the district would construe the provisions, and the case will state that. But they didn't state that. No, no, I'm just saying, you're saying that the court is not, the court's not a party to the operating agreement. The husband's not a party to the operating agreement. Correct. So why is the court bound to the operating agreement? I understand we can look at that regarding an abuse of discretion, whether the court violated the operating agreement. But you're telling us that the court itself is bound by the operating agreement. I believe the court is bound by the operating agreement. So I'm asking you, what if the operating agreement had some crazy clause in it that said, we're all going to get together and agree that we're not going to disperse any of our interest to our spouse should any of us get divorced, and that's our agreement, our operating agreement. So you're telling me that the court would be bound by that. I'm saying the court would be bound by that. The court may find that's an unconscionable provision, and the court can then, I think, in its distribution of assets, in its property distribution, ethically apply different assets to offset that. I still think the court is bound by that. I think those parties have a right to contractually bind themselves on how they're going to distribute those interests. They have a vested property right and a contracted right. It's not an ambiguous contract in this matter. The trial court and the defendant both admit we're not even going down that hurdle. It's unambiguous. It's straightforward. This is what you're supposed to do. And I think if the court said this is an unconscionable provision in the operating agreement, I'm bound by it because the parties have contracted to it. I don't have personal or subject jurisdiction over that LLC. The court could have brought that LLC in as a necessary party and said this provision I think is unconscionable. I want that LLC in here. I want them to have their day in court to tell me why it's not. They didn't do that. Neither party did that. The trial court didn't do it. The defendant didn't do that. And I think then if the court did bring that party in, they'd have their day in court. The LLC would have their day in court and the members would. They didn't do that in this party, in this action at all. It just didn't happen. I think the court would also then allocate different assets to offset that. If they figured that if it is a marital asset, they could offset other assets in the divorce proceeding to compensate for that. I don't think there's any case law. What I have found are the defendants actually cited to that gives the court the ability by operation of law to validate an unambiguous restriction on the transfer of membership interests. There's no case law. The first impression was DAVIC v. DAVIC. The court looked to that and said this is the first impression. We're going to look to North Carolina. We're going to look to the Supreme Court of Minnesota. Supreme Court of Minnesota in Casanova said if there's a specific provision restricting an involuntary transport, to me the court by operation of law cannot validate that. They looked to the appellate court in North Carolina. The appellate court in North Carolina also said that. I just don't see any basis where a court has that authority. And specifically in the circumstances here where the trial court nor the defendant even took that step to say this is an ambiguous contract or this is an unconscionable contract. They both straight admit yes. I mean the defendant goes so far as to say I'm not going to put an expert at trial to actually contest the valuation or to give you a valuation. I'm just going to say it is what the LLC's accountant states it is. Well, it was what the LLC accountant came up with until he didn't like the number. Unfortunately, he didn't give any evidence to the trial court. The trial court stated you provided no evidence to a different valuation. It's basically an attempt by the defendant to come back after the trial, dispute the LLC's accountant's valuation, get a newly court-created right to negotiate and litigate against an LLC and its members who weren't before the court, who weren't made a necessary party, to now be negotiating and litigating against a nonmember for a different valuation. That the members contractually obligated the procedure, the mechanism, and how they would buy back and redeem that member, a divorcing member's shares. Wasn't the operating agreement in DEVICS, didn't it specifically exempt court-ordered distributions? In DEVIC v. DEVIC, the court actually said that's when a husband and a wife, actually a husband restricted the shares 37 days before the divorce proceedings. The wife is unaware of the restriction. The restriction wasn't there at the beginning when the shares were acquired. It was more of 37 days before the divorce proceedings, marital settlement agreement says, wife, you get these amount of shares. Husband agreed to the valuation of the shares in DEVIC, and husband agreed to allocate those shares to the wife. And then the court actually said, due to the fact that this has never come before, we don't think that's regarding an involuntary transfer. And it released those restrictions. We said, no, no, we're not going to agree to an actual spouse restricting shares 37 days before a divorce proceeding. And I think that's very distinguishable. These shares have never been in the name of the defendant. They have always been owned by the plaintiff since the inception of the LLC. There's always been an operating agreement. Other members have come into this LLC, and they did it by the procedure set forth in the operating agreement. They did it by the unanimous prior written consent of all members. Would you agree that her interest is marital property? Yes, I completely agree her interest is marital property. And I think that's actually a valid point because if it's marital property, it also has a marital debt proportion to it. And what the court did in this matter was it said this is marital property, 65% to plaintiff, 35% defendant. Then in his final order, he says, defendant, I'm going to make the plaintiff transfer all of her interest to you. You go out and seek the highest value you can get, and you get to keep all of that. What the trial court failed to address was 16-6 says if the value comes in higher what the account valuation is, that difference in value is a debt. It's a debt that's due and owing by the plaintiff back to the LLC and its members. The trial court eviscerated this whole provision of the operating agreement. He not only eviscerated it, he shifted that marital debt completely to the plaintiff. She's now in a position where if the defendant seeks a value of $100,000, the accountant's value is $30,000, there's a $70,000 swing. She's liable for the $70,000. The defendant has now kept $81,500, and she's seeking indemnification from the defendant. There's no case law to support this or any statutory basis. The objective of the trial court was to disentangle these parties, not to entangle them and embed them in further litigation, and her seeking indemnification for a defendant of an interest he wasn't allowed to assign or transfer to her. Was that the subject of the motion for reimbursement? Yes. It's part of the motion for reimbursement. The motion for reimbursement basically addresses capital contributions and distributions. In this matter of 10, the trial court looked at the capital contributions, which were solely paid by the plaintiff, for 2010 and 2011, and basically said, I'm not going to address that, I'm not going to even rule on that, that the defendant has an obligation to pay those. But you plaintiff have an obligation to remit back to the defendant his share of the capital distributions. Were those paid by her with marital funds? That I'm not sure of. She paid the distributions from the LLC to the defendant. I don't know if they were marital, if they were paid solely out of her funds. That would make a difference, right? It would make a difference. I think we have to look at it. The problem that we run into is the court brings down its decision, and at the trial, since there's no valuation, there's this period of time where Linda, there's a period of time where the LLC is still paying out distributions to her, but the trial court hasn't said how this is going to get allocated between the two parties. It's a 35-65 split of the equity distribution when it's made. So what entails is that plaintiff is now remitting back to the defendant his 35 percent. She did. She paid him for 2010 and 2011. But the argument is that he still has that corresponding obligation to pay back to her his 35 percent of the capital contributions that she made. In any dissolution case, would you agree that the court has wide discretion in how to allocate the distribution of the property between the husband and the wife? Yes, Your Honor. You would agree with that? Yes. Okay. And so what you're saying basically is that there is this one category of property, if it's bound by some other outside agreement that only one of the spouses is a party to, that that then limits the court's ability to distribute that property. Is that what you're saying? Yes, Your Honor. I do believe that. Now, hold on just a minute. If, just for the sake of argument, if that property can be assigned to the other spouse, if that is okay, and I understand that's not your position, but let's just assume for a moment that that is proper, that is appropriate, does that other spouse then stand in the same position as, does the husband then stand in the same position as the wife had been in? Yes. And that position really is that she is, once the divorce case has been filed and they're proceeding to a divorce, she's no longer a member of that LLC, is she? No, I disagree. What position does it put her in? I disagree. The triggering event in that LLC, the provision, the date that she's actually divorced, is the triggering event for the calculation of the fair market value. The date that the judgment is entered? I think there's some leeway that you could argue that it was the date the judgment was entered or is it the actual memorandum of decision. I think for all intents and purposes in this matter, it became the date that the dissolution was effective for April 1. That was the date they used as a calculation, and that's the date the LLC and both parties informed the LLC accountant to use for evaluation of her membership interest. So as of that day, what is her position vis-a-vis the LLC? It's a valid point, and that's the defendant's argument. They argue that as of 4-1, she's no longer a member. There's no support in that in the LLC agreement. It doesn't say she's no longer a member. It says 16.6 says, divorcing member, this is how your shares are going to get bought back by the LLC. This is how we're going to calculate them. And oh, by the way, look back to 16-4 in the LLC operating agreement as to how we come up to that calculation, and that calculation gets arrived at by the date you're divorced, 4-1 in this case, and then the difference in valuation determined by the accountant versus the amount that's determined by the final non-appealable order in the trial court. So these members contractually allowed a non-spouse to have the ability to come into court, present their evidence, present their experts to say, no, no, LLC accountant, you got it wrong. This is the valuation. Now, I think your point is valid of what is the difference between this and other assets and the dissolution matter. That's a critical point. This isn't, and the judge, quite frankly, we believe it's an abuse of discretion. He treats this asset as a negotiable paper, like a credit card debt. He has, he states on the record, I can assign many things. I do it all the time. I assign credit card debt. Someone takes the risk for that debt. If they reap the benefit, then they took the risk. They get to reap the benefit. That's distinguishable from a member's membership interest. It's clear by the statutory, by the statute on the Illinois Limited Liability Company Act. A member's membership interests are a unique animal. Members have obligations, fiduciary obligations to the LLC. They have fiduciary obligations to their other members. You cannot take a member, court order that member to transfer her rights in direct violation of an unambiguous operating agreement, put her in a breach for her fellow members, put her in a breach of the LLC, and then turn around and say, well, sure, I can assign it. He can just step into her shoes. Those fellow members didn't contract with him. They didn't make the defendant a member of this LLC. They contracted with a defined group of individuals. That's who they wanted to do business with. That's what they contractually obligated themselves to do. By imposing, by forcibly admitting a nonmember into that LLC, you're unconstitutionally interfering and disrupting the vested property rights of the other members. And in this instance, they don't have a day in court. I just, I don't see any statutory basis for that. If it was a different asset, and I think that's a valid point, if we look at the case in Simmons, the case relied upon the defendant, it specifically addresses that. The court in Simmons actually took land in Wisconsin that was owned by one spouse and said, no, it's a marital asset, you're each joint tenants. The appellate court said, no, that's an abuse of discretion. You cannot entangle two parties. The party who owned that property should retain that property. He has an obligation to pay the non-owning spouse, the wife in that instance, her marital portion. But they both own it jointly, don't they, because it is marital property? I don't, I don't, that's not what the court held in Simmons. They said the owning spouse, the spouse whose title is the name, the land is property entitled to his name, was the owning spouse. I have a quick question. You said that the, you filed this motion for reimbursement, and I believe that was filed on August 8th of 12th. And the trial court, that was while the motions to reconsider were pending. The trial court ultimately ruled on a final order on September 11th of 12th. And the court refused to rule on your motion. Correct. How do we have jurisdiction over this case? I understand the court's question on that matter. I think there's jurisdiction because you cannot, you cannot divest the capital contributions and capitalized distributions from the ownership of the actual membership interests. They're all interrelated. If you're going to allocate, make it a court, and the court in this instance didn't come up with a valuation during the trial. They deferred that, so they did an actual percentage distribution. If you're going to do that percentage distribution like the trial court did, of a 65-35%, then I think it's an abuse of the discretion of the court not to take into consideration the capital contributions that were paid. Because if you don't, you're upsetting that equitable distribution of 65-35. And the court did that. So I think once he says, I'm not going to put a valuation on it, I'm going to do an actual percentage distribution, he has to actually look at those capital contributions that are paid, and if the distribution's going out, we're actually remitted back to the other party. If you don't, you've upset the 65-35% distribution that the court ordered. So the court should have looked at that. Yes, absolutely. So how do we have jurisdiction over this if the court should have done that before the final order was there? There's no 304A language in this order. No, you're right. I think the only way the court can address that at this point is for it to reverse back and say those membership interests should have never been assigned and transferred out to a nonmember. That cuts that off at that point and says, okay, from this point forward, 4-1, he never was entitled to a distribution from the LLC, and she did have an obligation to reimburse him. If we don't have jurisdiction, we can't say anything. The only thing we can say is raise our hands and say we don't have jurisdiction. Correct. We can't say we don't have jurisdiction, but if we did, we'd do these things. Correct. Okay. Thank you, counsel. I'll time for rebuttal. Mr. Pottinger, you may proceed. Thank you. Again, my name is R.C. Pottinger. I'm here on behalf of the defendant, Bruce Schlichting. To reiterate just briefly the facts, I would say it's sovereign that this case has got a little more complicated than really it needs to be from our perspective. This membership interest is a marital interest. It's a 20% interest in an LLC. The applicable provisions of the operating agreement, 16.4 and 16.6, do in effect vitiate any different value other than the company's accountant. Our interpretation of the agreement, which was not contested at the trial court level, was that upon the party's divorce, which was April 1, 2011, and it was for that reason that the parties were divorced before the final decision of the court, with regard to the balance of the assets, that at that point in time, the applicable provisions 16.6 and 16.4 became operative. Namely, at that point in time, the LLC was obligated to purchase the divorcing member's interest. There's no doubt that these members agreed they didn't want a spouse involved in the operation of the business. That's a very typical provision. Isn't this case more complicated because you chose not to, or your client chose not to challenge the value of this LLC in the divorce proceedings? The counsel is correct. If you look at 16.6, it says in there, if we would have contested the value, sort of a poison pill from our perspective, let's assume that the value, I'm not agreeing with this, but let's assume that the value is $30,000, okay? And we were to establish that it's $100,000. 16.6 says at that point in time, the member owes immediately back to the LLC the difference to $70,000. The effect of it. That's why she wouldn't want to contest it at trial because it doesn't help her at all. But it does create that, it instantaneously creates that marital liability. So there would be a $70,000, it's a marital asset, and that would trigger a $70,000 marital liability. So it, in effect, undercuts any, makes a moot point to try to value the membership interest. So both parties proceeded with the idea and presented it to the trial court, that pursuant to this agreement, once they're divorced, that the company's accountant would then perform this valuation and that there would be a payment made. In other words, she's no longer a member. She just has this contractual right to receive money based on the company accountant's value, based on fair value, and that payment is over time. Over, I think it's a five-year period of time. So based on that, we proceeded. There would have been no point, from our perspective, in trying to independently value the company. Because if it's lower than what the company, we really don't know what the company's accountant would have determined until after the divorce. That's just simply the effect of this agreement. What is clear in the record, however, is what was presented to the court is once this occurs, the company will, these triggering events will occur. What became abundantly clear, post-trial in the record, was that the plaintiff here had absolutely no intention of actually selling her interest. This began by our filing a motion to reconsider, where the trial court said, okay, there's this triggering mechanism. There's going to be the 6535 division. Based on some calculations that will be made in the future, there will be 6535. We filed a motion to reconsider. They did not file a motion to reconsider. In part, they filed a motion to reconsider, but not on this issue. Our motion was to ask the judge, judge, allow us to now enforce this contractual right. It's not a membership interest right anymore. It's just this contractual right to receive money. And as we now know from the record, we do contest the valuation that was ultimately made by the accountant because it didn't come to the standard set forth in the operating agreement, that he actually undertake a fair value analysis. What do you point to to determine that the accountant did not make a fair value assessment? After the trial, the parties took the deposition of the accountant, which is included in the record and is part of the brief. And we asked him if he held an opinion to a reasonable degree of certainty as to the fair market value. And he said he did not, that he only used a capitalization of earnings method, and that revenue going 5960 was attached to the deposition transcript. And he admitted that you would have to value the underlying asset. And that was done after the trial? That was done after the trial. There's no question about that. And it was really done, I believe, more as an enforcement mechanism. The court stuck with this motion to reconsider. And then both parties wanted to, we just wanted the right to enforce the right to receive the money from the LLC. From our position, Ms. Fansler, as she has now indicated and admitted, had no intention of ever selling the interest. So we said put us in the position now of negotiating with the LLC the interest. And we have a right, just simply under the contract itself, the operating agreement, to contest what Ms. Fansler would, that the company's accountant did not perform that valuation in accordance with the agreement. You were ultimately given 65% of the value of that asset. 35%. Sorry, 35%. So why is it that you believe that you're entitled to that item as opposed to its value? Because we contest that the $30,000 is the value of the LLC interest. But you didn't do that during the trial. We didn't know at the trial because of the nature of the operating agreement. The triggering event is not until the divorce is when the valuation would take place. And if we would have done another valuation in the trial, that could have created a marital liability, which would have been perhaps more. We didn't know. We're sort of dealt, that's the hand we were dealt at the trial. That's what the operating agreement said that was signed by all the parties. Well, why haven't you waived your right then to come in now and seek a different valuation? Well, I think everybody maybe waived their right to seek a different valuation. We didn't ask for a valuation. It doesn't matter what someone else waived. Did your client waive it? We did not. Why? Because we asked for the rights under the operating agreement to be assigned to us, for us to be able to negotiate with the LLC, and that Ms. Fansler would receive 65%, we would receive 35%. We just asked for the right to ask for that. During the course of the motion to reconsider, this letter from the company's accountant was brought in and said it was worth $30,000. The trial court asked Ms. Schlichting, she goes by Fansler now, I'm sorry, Ms. Fansler, Ms. Schlichting, to take a position, which she, that methodology is not contested here, to file her own motion as to what she says the value is. She, in fact, filed that motion. She said, I believe the value would be $30,000. We contested that. We said that valuation is not based on a fair value analysis. We disagree with it. We think it's worth substantially more. We maintain that position. The court, in effect, said to Ms. Schlichting, gave her many opportunities. The initial one was either allow Mr. Schlichting to negotiate this and you'll get 65%, or alternatively, accept $19,500, which would be 65% of $30,000, and you're made whole. In fact, she's made more than whole because under the agreement, she would receive that money over time with an interest rate. This required her to be paid $19,500 up front, which we tendered, but that's stayed at this point. And my client then receives whatever rights, and the court was crystal clear, whatever rights Ms. Fansler has in this entity, whatever remaining rights she has, he now stands in her shoes. They could be, they could be, it could be zero. And then that was argued repeatedly to the trial court. We could be buying $19,500 for nothing, and that's the risk that we're willing to take. But the court, in effect, to counsel's point, to divide these parties so we don't have this ongoing litigation. If somebody operating in bad faith, not negotiating with the LLC, all that sort of thing, said, I'm going to put, after much consideration, I'm going to put these rights under this operating agreement over to Mr. Schlichting. He's going to pay her $19,500, which is what she said 65% of the value is worth, and he has to maintain a certain amount of money in an account to indemnify her in case of any claims that she raised. So the court went over it backwards to separate these parties and to make Ms. Fansler or Schlichting whole. What's important, if the court reviews Judge Meyer's decision in March, I think it was March 20th of 2012, he was very clear that he did not contemplate that either party would own this asset at the end. Because we all said, once this divorce happens, okay, she has no right to be a member of this entity anymore. So your client isn't claiming to be a member, being forced into the membership? Oh, absolutely not. We're just saying we're entitled to the payout under the operating agreement. I mean, the reality of these operating agreements is people contemplated that they would be more valuable than they are. I mean, this is a real estate asset that's not worth as much. So it would be, presumably, you don't want to be bought out. Now, probably people want to be bought out, regardless. My client, he just has the rights now to enforce the agreement. It's akin to a law firm. The same right that she had. The same right that she had. He has the same right that she had, by virtue of that September 11th order. Judge Meyer said, the language is somewhat sparse, but he says, the order does not purport to award Bruce any greater or lesser rights than Larissa had, right? That's correct. Okay, so he stands in her shoes. Correct. Whatever those shoes are. Whatever those shoes are. Now, she may have reacquired a membership interest. I don't know. I mean, under the agreement, I mean, just logically, this is what the court is forced with, to deal with, is she should have been paid out after six months. Money should have started flowing in in October of 2011. It didn't happen. She may have reacquired a membership interest. The court, by saying, you may, I'm giving you whatever interest you have, and if you've reacquired an interest and you've made some deal with this LLC that we're not aware of, or you've not given the court any information about, well, then Bruce may stand in those shoes. Whatever rights, and they may have waived their rights to kick her out of the LLC and remove her from the LLC. That remains to be seen. That could very well be to our detriment. I'm not trying to say we have a greater advantage. There may be some agreement that she's reached that is prejudiced our rights in some regard. But the fact of the matter is, in this case, in terms of an abuse of discretion, given the record of this case, this judge went overboard in terms of listening to both sides at considerable length and trying to be sure that everybody got what they deserved. And from the perspective of Ms. Schlichting, the plaintiff in this case, she got exactly what she requested. She said it's worth 30%. The judge's order says you get $30,000. The judge's order says you get 65% of that. I'm ordering Mr. Schlichting to pay that, $19,500. And to the extent that he has to sue this LLC or they could third-party you in on some complaint, all things that were considered by the court, he has to indemnify you from that. No different than awarding somebody the house and the mortgage and saying, I've got to indemnify my wife on the mortgage. Well, typically, though, when you are doing a distribution of the marital assets as a trial court judge, typically you're dealing with all those assets at the same time, and you're trying to encompass a global disposition that includes every single asset because you don't want to have to deal with one asset in its isolated state. Correct. Follow me? Right. Do you think it's an abuse of discretion to only reserve that one asset as opposed to having reserved the distribution and done it all, I guess, in one fell swoop is what I'm asking. Well, in this case, I mean, the trial court has to deal with the facts as they are. The facts of this case were that the valuation is not performed until after the fact. But he could have reserved everything, right? He could have, and he reserved other assets. There was my client has a pending workers' compensation claim. He reserved jurisdiction on that issue. Any others reserved? Excuse me? Any others that he reserved? Off the top of my head, no. But it's an example within the case of where he's reserved jurisdiction to make a determination. I view this more as an enforcement action. We've got this motion to reconsider. If Ms. Fanzler or Ms. Schlichting was not negotiating in good faith, and these were all arguments we made at the trial court, we'll be back in here saying, it hasn't been sold. We haven't got a payment. We're supposed to get 65% of this pay or 35% of this payment as of October 1st. It hasn't happened. She hasn't done anything. We're saying, let's avoid all that. Let's step into her shoes. We are the best people, because we're adverse to some of the members of the LLC, to enforce the rights. We're in a better position to enforce the rights. It would be no different than a law firm partnership agreement where if the non-spouse is not a lawyer, can't step into the shoes of the law firm. But if it says upon divorce that that lawyer gets a payout and he's not collecting, you could put that wife in the shoes of that contract right to enforce those rights to receive those payments. So our enforcement at this point is two things. One, that the company accountant, first of all, they haven't made a payment according to the terms of the agreement. And second, that the company accountant did not conform with the operating agreement in that he didn't establish a fair value according to acceptable standards. And that is an understatement of the value. When was the divorce that would have been this triggering event? April 1st, 2011. And that was before the property distribution? Yes. It was before the court. What happened is during the course of the trial, on April 1st, there were contract payments which were due on this quarry. It was a quarry. It was a quarry that all the membership interest holders owe money for capital contributions. And in the evidence was a letter dated March of 2011 requesting an additional payment. Our position at the court at that time was divorce them right now because we're chasing an asset that has no value. Why would we put more capital in? It wasn't marital money. Why would we put more capital into this? It's really to our advantage. Divorce them on April 1st. The court agreed. Divorce on April 1st. It did ultimately allow Ms. Schlichting to make a payment to her because she still wanted to make a payment. The court allowed her to make the payment and presumably the court considered all that in its final decision. Would that have been a marital payment or would that have been a non-marital payment after the divorce judgment? It would have been a marital payment because it came from marital funds. Well, let me ask you this. I mean, you talk about this poison pill where it's clear that the agreement says that the member would be on the hook to post the promissory note for the difference in evaluation, correct? Correct. So if the member's on the hook to post that, she would have posted that after April 1st. But the liability, I think, would have accrued during – I mean, the liability would have been triggered as a result of a contract that happened during the divorce. That happened during the marriage? During the – excuse me – during the marriage. So the reason you view it as a poison pill is because you view that as a marital debt if she would have had to post that note. I do. It would be no different than if I signed a contract that said I had to – you know, an installment contract during the marriage that became due after the fact based on some triggering event. If you could briefly comment on this jurisdiction issue with the pending motion. As I see it, there are two issues with regard to the motion to reconsider. The judge entered a final order in March, really in February and March of 2011. After that, there was two options which were laid out. New counsel came in and filed really a motion to clarify, which gets us to this April 11th, 2012 order. Their motion that they filed in August, I don't know what – I mean, I filed a motion to dismiss, it doesn't matter. I don't know what basis in law they – under this case law or statute that they had filed that motion to adjudicate capital contributions. They're just trying to reopen the whole case. I mean, I really almost can't comment on what the basis for that April motion is. Well, if the court had dismissed the pursuit to your motion, we wouldn't be talking about this, but it's pending now. The court said, I'm not going to deal with this. And actually, the court said it wasn't going to deal with it when it was brought up again because the court said that a notice of appeal had been filed and the court felt it didn't have jurisdiction. Right. I said April. I misspoke. They filed this motion in August. Right. I filed a motion to dismiss that. My motion to dismiss wasn't even heard because the court felt it was divested of jurisdiction at that point in time. But the August motion itself is still subject to my motion to dismiss. It's simply a – I don't know what it – the motion itself doesn't reference any statutory authority or case law authority for trying to reopen proofs, I guess, because they're saying that there were capital contributions made. I don't know what it is either, having not really looked at it. But it is technically a post-judgment motion that's pending while the trial court had jurisdiction. It was filed while the trial court had jurisdiction. So my question is, how do we have jurisdiction with a pending motion? I don't think there is jurisdiction over that motion. Here? No, I'm not talking about jurisdiction over the motion. I'm talking about jurisdiction over this case. Well, I think the jurisdiction over the case arises out of the judge's order on September 11, 2012, and whether that was an enforcement, whether that was a post-decree proceeding, or a continuation of the original motions to reconsider. Well, how can you say it's a post-decree proceeding when the trial court said, here's my ruling, I'm going to give you two options, you can take A or B, let me know in a few weeks what you want to do, and then all these things happen after that. How is that a final order, where the court is giving options and has really entered a final order on what option it's going to choose? Well, the court said it was a final and appealable order, I believe. I don't want to misspeak, but it was either in the February or March order. And then it laid out these two options for the plaintiff. After that, the petition, the motion that they filed was for clarification, for some really, how do we enforce this? The court was very clear. It already went through the motion to reconsider and gave the plaintiff two options. We didn't contest the court's continuing right to adjudicate this matter with the hope that we would resolve the matter. No question about it. Whether that is a post-decree enforcement, no different than filing a petition to enforce an order post-decree or a petition for rule to show cause, or whether it's a continuing order on reconsideration, that hasn't been something that was specifically raised. I believe the court has, what's before the court right now in my view is the, in my client's view, excuse me, would be the September 11, 2012 order, which we don't contest. The court has jurisdiction in some fashion under that order. And that is what is before the court right now. What's still pending? What's that? What is still pending before the trial court? Nothing. Everything is staying right now pursuant to a prior appellate court ruling. Okay. Forget a state. What is pending? The only thing that's pending is that my client owes Ms. Schlichting $19,500. If this order is affirmed, owes $19,500. She has to assign her rights under this operating agreement to Mr. Schlichting, and that's it. And then he accepts that any liability would be his liability as well. Right. And that's already an order of the court that would be subject to his. Here's the question again. Okay. What motions are pending, if any, in the trial court? Presently? Yes. The pending motion would be the August 2012 motion to, for? For reimbursement. For reimbursement. Okay. And my motion to dismiss that, which the court determined it did not have jurisdiction to hear. Thank you, counsel. All right. Thank you. Ms. Schlichting. Is that working? Let's start at the beginning. The operating agreement is effective when the parties signed it and contractually obligated themselves. It didn't get triggered by this party's divorce action. It's applicable the minute it's executed by all the parties. It's a valid, enforceable contract. So the triggering event is for a calculation of value. The defendant and defendant's counsel were aware of 16.6 throughout the trial. Not only were they aware, the defendant's counsel admitted it would be an exercise of futility to trot into the trial court and present an expert to contest an evaluation of the LLC's account. He said it's as simple as that. The LLC's accountant comes up with a valuation, and that's what happens. Well, that's exactly what happened in this matter. Well, what if the LLC accountant came up with a valuation of $2? Then, by 16.6, the contractor- Well, I'm saying if your client contested that- Sure. Let's say something else happened. One of these other buyout provisions, not a divorce, but let's say incompetence or whatever some of these other buyout provisions came in, and your client said, you know, I'm going to invoke my rights under this buyout, and the accountant said $2. Your client wouldn't have the right to bring a suit to say $2 is unbelievably low? Well, I think you'd have to look who's bringing the suit. That's the whole issue. Again, it's a circular argument by the defendant because they're trying to analogize this asset similar to, he said, its enforcement right, an enforcement right as a credit card debtor, enforcement right as to an ownership and an LLC partnership, an attorney's partnership. No, it's not. If you look at the cases, if you look at Simmons, they were only dealing with land, and the court said, the appellate court said, trial courts, it's abuse of discretion. You cannot make this jointly owned when one party owns it, and this isn't an actual asset where it's controlled by an unambiguous operating agreement. This asset is a membership interest. It's governed by the Limited Liability Company Act of Illinois. We're in a dissolution proceeding, but that does not invalidate the concurrent application of the Limited Liability Act. That act entails fiduciary duties. The court has to look at that in a whole. It cannot sever off the Limited Liability Act and state, I'm in a dissolution proceeding. I'm not going to address that. It can't do that. There's no case law to support that. The Supreme Court also can't say that this asset that's owned by one party, you say, is marital property and subject to some type of valuation and distribution, whether it's by other assets or whatever, and to say, I'm only going to look to the operating agreement, and the operating agreement says whatever that accountant says goes, and that accountant comes in with an unbelievably ridiculous amount because it's a divorce case, which, of course, we've seen a couple times. Sure. So, I mean, whose right is it then to contest this? It was the right of the divorcing spouse. They gave them, the members gave that divorcing spouse the right to bring in a higher valuation of the court. They didn't unconsciously say, divorce court, we're not going to let you bring in a valuation. We're going to say it's X. They said, we have our accountant. He's been our accountant since the inception of this LLC. We are comfortable. We are contractually obligating ourselves as an LLC to redeem and pay out our divorcing member for her membership interest based on what our LLC accountant deems to be the fair market value of this asset. And you can bring in whatever you want to show it's higher. Absolutely. But if it's higher and the court comes in higher, then the member has to give a note to the LLC for the difference. Correct. A marital debt. Correct. And that's actually the abuse by the trial court, because the trial court failed to recognize that. That the LLC is protecting themselves, contractually saying, it's our intent. We don't want a third party. We're going to protect ourselves. But we also understand that a divorcing member has the right to be paid, if it is a marital asset, that they're going to get an actual proportion of that valuation of that asset. We are going to allow the higher value. They could have said no. They could have contractually obligated themselves to say, whatever LLC accountant states, that's the value. Trial court, you're bound. They didn't. They said the higher of the valuation. The difference, remember, you're going to have to make sure us as a unit, the membership, is whole. You owe it back to us. It is a marital debt. And that's exactly the abuse by the trial court. They allocated the entire marital asset, 6535, with no regard to the marital corresponding marital debt. He's allowing a defendant, a nonmember, to step into her shoes to, quote, litigate and negotiate against the LLC. There is no right for that. And there's no jurisdiction and no statutory authority to give the court the authority to court create a new right and impose that on an LLC and its members who aren't even before the court. Well, I guess the issue really gets down to fair market value and who gets to choose fair market value. And if, in fact, he had brought in a valuation higher than what the accountant says, and this is all hashed out at the trial, then the difference in the value becomes a marital debt from the two parties, divorcing parties, back to the LLC. So it's a vicious cycle where really, in reality, the only person establishing fair market value is, in fact, the LLC's accountant. It's not a vicious cycle. But I'm just saying that's the only person who's really establishing the value. I disagree with that. If you calculate the numbers, we're pre-assuming that the distribution is a 6535 because at this point we know what the trial court did. When they're at a trial, they have no idea. You have to assume we're at 50-50. We don't have any other indication of where we're going to come on this asset. If they brought the valuation of a higher value from their expert, and remember, they brought in a forensics financial expert and business valuation expert to testify to other assets. If they had brought him in to testify to the value of this asset and they said, no, we think it's $100,000, if you calculate the difference, the court then has the position to say, all right, it's $100,000. I'm going to rule it's $100,000. There's a $70,000 corresponding debt. How am I going to allocate that asset? If the court had allocated that asset 65% to defendant and 35% to plaintiff, guess what? Defendant has now had an advantage. There's a monetary gain. You cannot step back after you have a decision on the trial court and say, I don't agree with that valuation. The marital estate is still footing the bill for the $70,000 in some fashion. The marital estate is footing the bill, but how are they footing that bill? Well, I understand it can be distributed differently, but you still have the $70,000 debt that has to be distributed out of the marital estate. Okay, so the marital estate is losing. So, in essence, the LLC accountant gets to pick the value. I disagree because the marital estate, the valuation of 70, there's a marital debt. If we use the numbers 130, if you look at it going to trial, you don't know what the distribution is going to be, and we say, okay, we don't know what this asset is going to be worth, there's going to be a $70,000 debt. If the court chooses to allocate that $35,000 to plaintiff and $35,000 to defendant, that would come off the proportional shares of however that debt is. And if we're at 50-50, you're right, we're at a no gain to the other party. However, if the court felt, after it heard the evidence in trial, that no, I think this is well worth more evaluation, which it didn't. The court actually agreed with the LLC accountant's valuation. I'm going to say it's worth $100,000. He could have allocated 65% to defendant. He didn't have to allocate 65% of the debt to the defendant. He has that ability. That's the actual objective of the trial court. He is to allocate these assets to disentangle the parties, encompassing all of the assets, not segregate one asset to itself, not address the corresponding marital debt and say, I've done an equitable distribution. Plaintiff, you go out there and seek identification from the defendant. It's a circular argument. The defendant on one hand argues she had no right. April 1st, their divorce, she has no rights. It's an enforcement right. The next breath, they argue, she steps in his shoes. That's all it is. He's stepping in her shoes. He's taking her rights. You just argued she had no rights. You don't get it both ways. She's a member. She has the rights they contractually obligated themselves by the operating agreement. 16-6 did not give her the right outside the divorce proceeding to negotiate and litigate against the LLC in another forum to maximize the value. It's direct contradiction of the LLC agreement. And when he states, yeah, I think that's acceptable, it's not acceptable. It's direct contradiction with Inouye Weiss. Inouye Weiss, the debtor tried to transfer and assign his membership interests to a creditor, and the actual creditor said, okay, I want to enforce my right to that asset. And the court said, no, it's an invalid assignment and transfer because the operating agreement, which that member contractually obligated himself to, stated you cannot assign, you cannot transfer without the prior written consent of our fellow members. There's no consent here. Thank you. I'd like to thank both counsel for their arguments, and the case will be taken under advisement. Thank you for your assistance.